GERALD KIMBER, as Special Adm'r. of the Estate of Thomas Kimber, Deceased, Plaintiff-Appellant, v. THE CITY OF WARRENVILLE *et al.*, Defendants-Appellees.

Second District   No. 2—92—1169

Opinion filed August 2, 1993.

Aldo E. Botti, Frank J. Wesolowski, and Ronald D. Menna, all of Botti, Marinaccio & Tameling, Ltd., of Oak Brook, for appellant.

Michael D. Bersani and Charles E. Hervas, both of Hervas, Sotos & Condon, P.C., of Itasca, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

This appeal arose in response to an order of the circuit court of Du Page County granting summary judgment in favor of the defendants, City of Warrenville and John Pikolcz. The plaintiff, Gerald Kimber, special administrator of the estate of Thomas Kimber, filed suit against the defendants after a single-car accident following a high-speed police chase resulted in the death of Thomas Kimber, the driver of the vehicle being pursued. On appeal, plaintiff asserts that the trial court erred in granting summary judgment because: (1) there exist issues of material fact; (2) the defendants owed a duty of due care to Thomas Kimber; (3) the defendants' conduct during the high-speed police chase was willful and wanton; and (4) the defendants' conduct during the chase was the proximate cause of Thomas Kimber's death. We affirm.

On April 5, 1986, at approximately 2 a.m., City of Warrenville police officer John Pikolcz was patrolling Route 59 in Warrenville in his marked squad car when he observed ahead of him a vehicle which pulled rapidly out of a subdivision into the northbound lane of Route 59. The vehicle made a left turn onto Route 59, pulling in front of an oncoming southbound truck. From the officer's viewpoint, the vehicle should have yielded to the truck before entering

the roadway. Also, the vehicle pulled out at a faster than normal rate of speed. Because it is not uncommon for persons to drive under the influence of alcohol at that time of the morning, Officer Pikolcz decided to follow the vehicle in order to observe the manner in which it was being driven.

The officer could not identify the vehicle as either a car or a truck. There were two other cars ahead of Officer Pikolcz on Route 59 northbound, so when the vehicle pulled out of the subdivision and started going northbound on Route 59, Officer Pikolcz may have lost sight of the vehicle. In attempting to catch up to the vehicle, Officer Pikolcz was travelling at or near the posted 55-mile-per-hour speed limit. The officer estimated, however, that the vehicle was exceeding the speed limit, because the officer had to increase his own speed in order to follow the vehicle. At the intersection of Route 59 and Joliet Street, the vehicle slowed down almost to a stop and then abruptly turned left onto Joliet Street, heading northwest, again failing to yield to oncoming southbound traffic. At that point, Officer Pikolcz decided to make a traffic stop based on the vehicle's failure to yield to oncoming traffic and excessive speed on Route 59. The officer activated his overhead "MARS" lights and called in the vehicle's license plate number. The radio check revealed that the vehicle was registered to GMAC Leasing. Additionally, the officer observed that the vehicle was a black El Camino being driven by a young, white male with dark hair. The driver of the vehicle was later identified as the decedent, Thomas Kimber. He was the sole occupant of the vehicle.

As Officer Pikolcz was attempting to effectuate his traffic stop on Joliet Street, the decedent abruptly accelerated. Immediately notifying his dispatcher that he was in pursuit, the officer activated his siren. He also notified the Illinois State Police Emergency Radio Network (ISPERN) of the pursuit. The decedent made a right-hand, eastbound turn onto Roosevelt Road and proceeded through Winfield, Wheaton, Glen Ellyn, and into Lombard. As the chase proceeded through those communities, some local police who heard about the chase over the radio joined the pursuit.

In Wheaton, the El Camino was observed by motorists to be travelling at an estimated 100 miles per hour. The pursuing police cars were going the same speed, but were three seconds or 100 yards behind the eluding vehicle.

In Glen Ellyn, a Glen Ellyn police officer heard Officer Pikolcz' ISPERN dispatch, activated his emergency lights and siren, and blocked off the south side of the intersection of Main Street and

Roosevelt Road. That officer recalled that the eluding vehicle did not have its headlights on and that it ran a red light at Roosevelt and Main Streets. He estimated that the vehicle was 2 to 2½ blocks ahead of Pikolcz.

At one point during the pursuit Officer Pikolcz observed that he was travelling 90 to 95 miles per hour and slowed down thereafter. He kept his emergency lights and siren activated throughout the entire pursuit. When the eluding vehicle ran a red light in Glen Ellyn, Officer Pikolcz braked hard reducing his speed for his own safety and the safety of others.

When the pursuit entered Lombard, Officer Pikolcz observed two Lombard squad cars at the intersection of Finley and Roosevelt Roads. Both Lombard squad cars had their overhead emergency lights activated for the express purpose of alerting traffic in the general area to the speeding, eluding vehicle. One of the Lombard officers used a hand-held radar unit and clocked the eluding vehicle travelling at 104 miles per hour. The maximum speed limit on Roosevelt Road in Lombard is 35 miles per hour. The other Lombard officer observed that the eluding vehicle was pulling away from the pursuing police vehicles and that, at the intersection of Finley and Roosevelt Roads, the eluding vehicle was approximately one-quarter mile or 5 to 10 seconds ahead of its pursuers. The vehicle sped east of Finley Road through the intersection of Main and Roosevelt in Lombard, towards the intersection of Highland and Roosevelt.

At Finley Road in Lombard, Officer Pikolcz lost sight of the eluding vehicle. At Finley Road he turned off his emergency lights and siren and notified his dispatcher that he had terminated his pursuit. This transmission occurred at 2:22:59 a.m. Other pursuing squad cars also terminated their pursuit near Finley Road. A Glen Ellyn police officer continued eastbound on Roosevelt Road and observed some police cars turning around in a parking lot on the south side of the street, all with their emergency lights and sirens turned off. In addition, the officer did not observe any emergency lights activated east on Roosevelt Road.

As the eluding vehicle approached the intersection of Highland and Roosevelt Roads in Lombard which was, Officer Pikolcz related, about three-quarters to one mile east of Finley Road, the vehicle struck a utility pole approximately 150 feet west of that intersection. The vehicle then skidded along the length of a gas station parking lot located on the south side of Roosevelt Road and struck another utility pole at the corner. The gas station attendant on duty

saw the decedent's vehicle skid, strike the second pole, and start on fire.

After terminating his pursuit, Officer Pikolcz continued eastbound on Roosevelt Road, looking for a place to turn around. At the intersection of Highland and Roosevelt Roads, he observed a small fire on the south side of the road. He stopped and got out of his car. He then realized that the fire was coming from the vehicle he had been pursuing. Officer Pikolcz went back to his squad car and radioed for assistance and for the fire department. He grabbed a fire extinguisher from his squad car, returned to the burning car, and attempted to break the passenger-side window in an unsuccessful attempt to rescue the decedent from the burning vehicle.

The decedent died within seconds of impact. During a subsequent investigation by the Du Page County sheriff's office, no tire marks were found on the roadway nor was there other evidence of braking by the El Camino prior to impact. The investigation also revealed that the decedent's driver's license had been suspended. A toxicology and chemical analysis of specimens of the decedent's blood and urine revealed that the decedent had a blood-alcohol level of .16 at the time of his death.

Witnesses in the vicinity of Roosevelt Road in Lombard recalled that the traffic was very light at the time of the pursuit. The roads were also dry, and the weather was clear.

On March 23, 1988, Gerald Kimber, special administrator of the Estate of Thomas Kimber, filed a complaint against the defendants, City of Warrenville and John Pikolcz, alleging negligence for the death of Thomas Kimber.

On April 2, 1992, defendants filed their motion for summary judgment arguing that the defendant Pikolcz was not the proximate cause of Thomas Kimber's death, that there was no issue of material fact that defendants acted willfully and wantonly, and that the defendants are immune, through public official immunity, from liability in this case. Excerpts from 11 witnesses' depositions were attached to the motion, as was the coroner's certificate of death, the affidavit of the investigating officer of the Du Page County sheriff's office, and an analysis of the decedent's blood.

Plaintiff filed his response and memorandum in support of his response to the motion for summary judgment on July 31, 1992. Attached were the complaint and answer, excerpts from eight witnesses' depositions, a copy of the transcript of the radio transmissions received and made by the Illinois State Police, and a copy of the City of Warrenville police chase policy in force on the day of

the occurrence. On August 7, 1992, the defendants filed their reply in support of their motion for summary judgment.

On August 27, 1992, the trial court granted the defendants' summary judgment motion. The trial court found that there was no duty owed to Thomas Kimber; that if there was a duty, it was not violated; and that defendant Pikolcz' conduct was not the proximate cause of Thomas Kimber's death. The plaintiff filed a timely notice of appeal. On appeal, plaintiff asserts that the trial court erred in granting summary judgment because: (1) there exist issues of material fact; (2) the defendants owed a duty of due care to Thomas Kimber; (3) the defendants' conduct during the high-speed police chase was willful and wanton, and (4) the defendants' conduct during the chase was the proximate cause of Thomas Kimber's death.

A motion for summary judgment should be granted where the pleadings, depositions, and affidavits reveal that there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005; *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 420-21.) The plaintiff has alleged negligence on the part of the defendants toward plaintiff's deceased. To state properly a cause of action for negligence, the plaintiff must establish that the defendant owed plaintiff's deceased a duty of care, that defendant breached that duty, and that an injury was proximately caused by the breach. *Wojdyla*, 148 Ill. 2d at 421.

First, we shall address the issue of proximate cause. The plaintiff asserts that Officer Pikolcz was the legal cause of Thomas Kimber's death, that Officer Pikolcz did not terminate his pursuit of Thomas Kimber as he said he did, and that the emerging legal trend is to find that Pikolcz was a proximate cause of Thomas Kimber's death. That is, even if the court finds that Thomas Kimber was negligent in eluding the police, it was Kimber's negligence joined by the negligence of Officer Pikolcz that caused the fatal accident. In so asserting, the plaintiff contends that Officer Pikolcz was negligent in pursuing the decedent for minor traffic violations for 11 miles through several communities at a high speed. Thus, the plaintiff argues, the defendants were a proximate cause of the accident and are liable for the death of Thomas Kimber. The defendants assert that Thomas Kimber created a condition under which he ended his own life. Furthermore, they contend, Officer Pikolcz' distance behind decedent and his termination of the pursuit vitiates any causal connection between the police officer's conduct and the decedent's accident and death. Lastly, they contend, Officer Pikolcz'

conduct did not constitute an intervening, superseding cause of the decedent's accident and death.

In *Turner v. Roesner* (1990), 193 Ill. App. 3d 482, this court discussed what constitutes proximate cause: proximate cause is made up of two elements, actual cause and legal cause. Actual cause is cause in fact. A defendant's conduct may be deemed the actual cause of a plaintiff's injury if, "but for" the defendant's actions, the injury would not have occurred. If actual cause is established, the next question is whether the defendant should be held legally responsible for it. (*Turner*, 193 Ill. App. 3d at 490.) The foreseeability of the plaintiff's injury is a factor in determining proximate cause. The intervention of independent intervening forces will not break the causal connection if the intervention of such forces was itself foreseeable. (*Sundin v. Hughes* (1969), 107 Ill. App. 2d 195, 203.) The issue of proximate cause is normally one for the jury to decide. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 130.) However, where the facts are undisputed and reasonable men could not differ as to the inferences to be drawn from those facts, the issue of proximate cause may be determined as a matter of law. *Felty*, 71 Ill. 2d at 130.

The facts in this case are not in dispute. The record revealed that the decedent did not pull over when signalled to by the police and that, rather, he accelerated and fled. The record also reveals that Officer Pikolcz maintained a significant distance from the decedent, that he terminated his pursuit, deactivated his emergency equipment and slowed down significantly before the accident. Although the plaintiff posits that there is a material issue of fact as to whether Officer Pikolcz terminated the pursuit before the accident occurred, all the evidence in the record which was cited by the parties supports the inference that the pursuit was terminated at either Finley or Main Street in Lombard, before the accident occurred. We note that the plaintiff in his reply brief speculates without citing the record that Officer Pikolcz continued his pursuit past Finley and Main Streets to the scene of the accident. The plaintiff speculates further about Officer Pikolcz' conduct; we do not rely on such speculation but, rather, on the record. Thus, we shall determine whether the defendants were the proximate cause of the death of Thomas Kimber as a matter of law.

The plaintiff argues that the defendants contend that there is a *per se* rule that a police officer can never be the proximate cause of a pursuee's injuries. Such an argument by defendant is not evident from the briefs. Furthermore, we find plaintiff's cite to *Sundin v.*

*Hughes* (1969), 107 Ill. App. 2d 195, to demonstrate that Illinois courts have held that a police officer may be the proximate cause of a plaintiff/pursuee's injuries, to be mistaken. In *Sundin*, the plaintiff was an innocent third party, not the pursuee. Thus, *Sundin* is a third-party case which is not helpful in addressing the issue in this case: whether a police officer may be the proximate cause of the pursuee's injuries in the police chase context. Our rationale for this conclusion is developed in our analysis of the *Huddleston* case. *Huddleston v. City of Charleston* (1986), 144 Ill. App. 3d 1077.

We find the rationale of the Appellate Court, Fourth District, in *Huddleston* particularly applicable to the present case. In that case, the passenger on a motorcycle involved in a high-speed police chase was killed when the driver lost control of the motorcycle. The special administrator of the decedent's estate brought suit against the City of Charleston on the basis that its police officers acted negligently to cause the death. The facts were as follows. The motorcycle was observed by a sheriff's officer to be travelling at about 100 miles per hour. The officer informed the sheriff's department, turned on his emergency lights and siren, and gave chase for over six miles. Eventually, the officer lost sight of the motorcycle. Two other officers received radio transmission of the chase and prepared to intercept the motorcycle. They positioned their vehicles on the route that the motorcycle was reported to be following, partially blocking the highway lanes with their squad cars. As the motorcycle approached the parked squad cars, it was travelling at 90 miles per hour. The motorcycle successfully avoided both vehicles, but in doing so, the driver lost control of the motorcycle, and plaintiff's decedent was thrown from the motorcycle and killed, while the driver survived the accident. Plaintiff brought suit against the defendant police officers and their employer, alleging that the officers acted negligently by blocking the roadway when they knew a high-speed chase was approaching. In the trial court, the defendants' motion for a directed verdict was granted. That decision was affirmed by the Appellate Court, Fourth District. We draw on two lines of thought from *Huddleston* to support our analysis.

The first line of analysis we rely upon makes *Huddleston* pertinent to the present case because the present case involves the potential liability of the police in an action brought by the pursuee's estate. We look to *Huddleston* because the *Huddleston* court found that the plaintiff's deceased was not an innocent bystander (although technically he was a third party). The present case involves no innocent third party; the administrator of the pursuee's estate

has brought suit against the police. In contrast, much of the case law in the police chase context involves the liability of the police *vis-a-vis* an innocent third party who has been injured either by the pursuee or the police. Thus, here we are evaluating the conduct and duties of the police *vis-a-vis* a part of the dangerous instrumentality.

In its analysis, the *Huddleston* court distinguished *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, which was a case that the *Huddleston* plaintiff asserted was on point. In *Brooks*, plaintiff filed suit on a negligence theory when her decedent was killed by a speeding vehicle pursued by the police in a high-speed chase. The decedent had been told to park to the side of the road nearby a police roadblock by a defendant police officer in an effort to prevent the decedent from being hit by the oncoming cars. The *Brooks* trial court entered a verdict for the plaintiff; the defendants' judgment *n.o.v.* motion was denied, and that ruling was affirmed by the appellate court. The *Huddleston* court distinguished *Brooks* on the basis that the decedent in *Brooks* was an innocent third party and that while the decedent in *Huddleston* was a third party, he was not an unwilling part of the dangerous instrumentality. This is because the decedent in *Huddleston* made no attempt to extricate himself from his precarious position. At trial, the *Huddleston* motorcycle driver testified that the decedent never asked to get off the motorcycle, stayed on the motorcycle when the driver "paused," and offered the driver his sunglasses when the driver's flew off. (*Huddleston*, 144 Ill. App. 3d at 1079.) Thus, the decedent was not an unwilling part of the dangerous instrumentality.

Likewise, and even more to the point, the decedent in the present case was clearly a perpetrator of the dangerous instrumentality: he got a signal from the police to stop which he ignored and accelerated to the point of prompting an 11-mile, high-speed chase. Thus, in the present case we rely on *Huddleston* rather than other third-party cases because in both Huddleston and the instant case the actions of the police are considered not *vis-a-vis* an innocent bystander, but *vis-a-vis* a part of the dangerous instrumentality.

The second line of analysis for which we rely on *Huddleston* is as follows. In its opinion, the *Huddleston* court reasoned that the motorcycle driver's actions of driving over 80 miles per hour for almost six miles on a road under repair, driving down the center line of the two-lane road in order to pass eastbound traffic and to avoid being hit by oncoming westbound traffic, not being licensed to drive a motorcycle, and driving an unregistered motorcycle constituted

gross negligence. The court also reasoned that the driver's reckless disregard for his own safety and others' safety, his disregard for the various licensing rules, and his engaging in a high-speed police chase evidenced such negligence that his actions constituted the original wrong. The court then examined the defendants' intervening conduct to determine whether it broke the causal connection. In doing so, it determined as a matter of law that the driver should have reasonably anticipated the actions of the defendant officers in creating a roadblock. Thus, the defendants' actions were foreseeable and not the proximate cause of the decedent's death.

Analogously, in the present case, we determine that the decedent's actions of cutting off traffic when making left-hand turns, speeding, not stopping when signalled by the emergency lights of a police car, driving under the influence of alcohol, initiating a high-speed chase, and going through a red light constitute negligence. His actions constitute such negligence so that it is clear that the decedent's actions constitute the original wrong. Furthermore, we determine that it was foreseeable that Officer Pikolcz would continue to pursue the decedent, since the decedent did not respond lawfully to the officer's emergency lights, and the officer would persist to attempt to stop this alleged violator of motor vehicle laws. Thus, we determine that the decedent's actions were solely responsible for his death and Officer Pikolcz' conduct was not a proximate cause of the death.

The plaintiff asserts that the emergent majority view in other jurisdictions is to hold the police officer's negligent pursuit a concurrent proximate cause of a death or injury arising from a high speed pursuit. (See *Fiser v. City of Ann Arbor* (1983), 417 Mich. 461, 339 N.W.2d 413; *Estate of Aten v. City of Tucson* (1991), 169 Ariz. 147, 817 P.2d 951; *Travis v. City of Mesquite* (Tex. 1992), 830 S.W.2d 94.) The plaintiff urges that Illinois courts follow this view.

These cases do not apply to the present case, just as *Brooks* does not apply. Each of these cases is an action in which an innocent third party was injured during a police chase, and that third party brought suit against the police officers and/or their employers. In such a situation, it may be determined that the police are one of the proximate causes of the injury. However, in the present case, we are dealing with a claim of a willing part of the dangerous instrumentality, and thus we determine that the pursuee's conduct was the sole proximate cause of his death. Thus, we do not find the present case or *Huddleston* to be inconsistent with plaintiff's cited cases.

Moreover, the facts establish that at the time of the accident Officer Pikolcz had abandoned pursuit. Thus, even assuming *arguendo* that Pikolcz acted negligently, such negligence would be too remote to be considered a proximate cause of the mishap. See *Armstrong v. Mudd* (C.D. Ill. 1987), 655 F. Supp. 853.

Thus, we determine that there exist no issues of material fact in this case, and, as a matter of law, defendant Pikolcz' conduct was not a proximate cause of the death of Thomas Kimber. Since one element of the negligence claim is lacking in this cause, we affirm the trial court's grant of summary judgment.

Affirmed.

INGLIS, P.J., and UNVERZAGT, J., concur.