JIM URBAN *et al.*, Co-Adm'rs of the Estate of Lisa Urban, Deceased, Plaintiffs-Appellants, v. THE VILLAGE OF LINCOLNSHIRE *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—94—1717

■■■■■■■■

Opinion filed June 2, 1995.

Susan E. Loggans and Patrick J. Condron, both of Susan E. Loggans & Associates, P.C., of Chicago, for appellants.

Richard T. Wimmer and James V. Ferolo, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Jim and Catherine Urban, filed this action as co-administrators of the estate of their deceased daughter, Lisa Urban, seeking recovery against defendants, Village of Lincolnshire and Lincolnshire police officer Alan David Boyes, for the death of the decedent arising from a collision between the motorcycle on which she was riding and an automobile. Counts III and IV of plaintiffs' second amended complaint alleged willful and wanton conduct on the part of defendants in engaging in a high-speed pursuit of the motorcycle shortly before the accident occurred. The trial court granted summary judgment in favor of defendants on both counts, and plaintiffs appeal.

The relevant facts are as follows. At approximately 8:30 p.m. on the evening of June 29, 1989, Charles Dalenberg and the decedent traveled on Dalenberg's motorcycle to Antioch, Illinois, where they boarded a ferry which transported them to Blarney Island, an island on which a drinking establishment by the same name is located. Neither Dalenberg, who was driving the motorcycle, nor the decedent was wearing a helmet. At his deposition, Dalenberg testified that after he picked up the decedent from her house prior to driving to the ferry, the two stopped at a gas station where they split a can of

beer. Later, while waiting for the ferry to take them to the island, Dalenberg consumed two more beers. The decedent was also drinking during the 15-minute wait for the ferry, and Dalenberg believed the decedent drank about the same amount. During the $1^1/2$-hour period on the island, Dalenberg drank two more beers. Dalenberg and the decedent left the island at around midnight and returned to the pier. On the ferry ride back to the pier, Dalenberg drank two additional beers.

When they reached land, Dalenberg and the decedent got back on the motorcycle and traveled with a fellow motorcyclist to a restaurant located north of Illinois Routes 21 and 22 in Lincolnshire. Dalenberg and the decedent remained at the restaurant for 10 minutes and left at approximately 12:40 a.m. Dalenberg believed, but was not certain, that he turned right out of the restaurant's parking lot onto southbound Route 21 and, at the first intersection, turned left onto Route 22 going eastbound toward Interstate 294. Dalenberg stated that he drove onto southbound I-294 and at some point noticed that his gas tank was nearly empty; he and the decedent exited onto westbound Willow Road to fill up. Finding no gas station open on Willow Road, Dalenberg decided to travel the rest of the way home on Willow and intended to exit at Wolf Road. (At that location, Willow Road is known as Palatine Road.) Dalenberg testified that at no time after leaving the restaurant was he ever pursued by the police. He did not see flashing lights behind him or hear sirens at any point.

Boyes testified at his deposition that he was parked in his squad car in a parking lot at the northeast corner of Routes 21 and 22. At approximately 12:40 a.m. on the morning of June 30, Boyes heard the sound of a revving motorcycle engine and looked up to see Dalenberg and the decedent on a motorcycle weaving in and out of traffic in the two southbound lanes of Route 21 at a high rate of speed. Boyes testified that he clocked the speed of the motorcycle on his radar unit at 78 miles per hour. The speed limit was 35 miles per hour. Boyes activated his flashing lights and began to pursue the motorcycle southbound on Route 21. Contrary to Dalenberg's deposition testimony, Boyes stated that Dalenberg and the decedent remained on Route 21 and did not turn onto Route 22. When Dalenberg failed to stop, Boyes engaged his siren. Dalenberg drove through a red light at Route 21 and Aptakisic Road, after which Boyes radioed his dispatcher to notify him that he was in pursuit of a motorcycle. He gave his location and advised that he was switching to "ISPERN," the Illinois State Police Emergency Radio Network. Boyes was outside his Lincolnshire jurisdiction by the time he

reached Aptakisic Road and could no longer communicate on the "local" frequency. Throughout the pursuit, the motorcycle reached speeds far in excess of the posted speed limits, which ranged from 35 to 50 miles per hour.

Dalenberg and the decedent continued down Route 21 with Boyes still following. Boyes came within one-quarter mile of the motorcycle with his lights still flashing, but Dalenberg failed to pull over. Boyes made two or three additional radio transmissions on ISPERN. Each time, Boyes announced that he was in pursuit of a motorcycle and gave his location. At Route 21 and Deerfield Road, one of Boyes' dispatches was acknowledged by District 3 State Police. Boyes stated his opinion that he was authorized to continue his pursuit of Dalenberg even though he was no longer within the boundaries of Lincolnshire.

Dalenberg and the decedent ran another red light at Route 21 and Wolf Road, which Boyes stated was approximately three miles south of where the pursuit began. Dalenberg continued to weave around cars in the two southbound lanes. A little over a mile later, at Route 21 and Dundee Road, Boyes made another radio transmission advising that he was still in pursuit and giving his location. The dispatcher acknowledged receipt of the call.

At Route 21 and Palatine Frontage Road, Dalenberg and the decedent made a right turn onto westbound Palatine Frontage Road. At that point, Boyes was three car lengths behind them. Boyes again radioed his location over ISPERN. Dalenberg and the decedent then drove into the lane of oncoming traffic to pass two westbound cars. Boyes was unable to safely pass the cars and as a result lost sight of the motorcycle. Boyes remained on the frontage road and decreased his speed. He slowed down to a near stop and looked around several nearby buildings to see if Dalenberg and the decedent were hiding there. About 20 seconds elapsed from the time he lost sight of the motorcycle to the time he began looking between the buildings. He spent approximately 10 seconds searching that area. When he failed to find the motorcycle, he continued driving toward the next intersection, intending to turn around and head home. When he reached the next intersection, that being Palatine Frontage Road and Wolf Road in Wheeling, he discovered that Dalenberg and the decedent had collided with an automobile owned by Jeanette Jagiello and driven by Scott Cwik. Boyes immediately reported the accident over the police radio. Moments later, several other squad cars and emergency rescue personnel arrived. The decedent died later that day as a result of injuries sustained in the collision.

After reporting the accident, Boyes called his station and

requested that his supervisor, Sergeant Weinstein, meet him at the scene. Weinstein was off duty at the time, and no other supervisor was on duty. Weinstein was contacted at his home and met Boyes at the scene shortly thereafter.

Boyes testified as to the department's policies and procedures concerning police pursuits. He stated that in the course of a pursuit, radio communications are to be transmitted over ISPERN. Boyes acknowledged the existence of a Lincolnshire police department regulation pertaining to pursuits outside the Lincolnshire jurisdiction, which states:

> "Department vehicles are normally to be driven within the incorporated limits of the Village. It is understood that assists to other agencies or other assignments may require an officer to travel outside the Village limits; however, all incidents requiring an officer to leave the Village must be approved by a supervisor and logged with the radio dispatcher."

With respect to the applicability of this rule to the pursuit in question, Boyes stated that no supervisor was on duty at the time the pursuit occurred, and he was thus required to use his own discretion as to whether to continue the pursuit outside the village limits. During the course of the pursuit, the weather was clear and dry and traffic was light, and he decided to continue the pursuit. Boyes also acknowledged the existence of another Lincolnshire police department regulation requiring an officer in pursuit to weigh the risks involved in the pursuit against the nature of the offense which necessitated the pursuit. That regulation, known as Lincolnshire Police Department General Order 84—010.1, states as follows:

> "When operating an emergency vehicle in pursuit of a known or suspected offender, the officer will always weigh the risks involved against the nature of the offense which caused the pursuit. Pursuit will be terminated when, in the officer's judgment, the risks of high speed pursuit outweigh the desirability of apprehension. This is especially true when the only known offense is a misdemeanor or traffic violation. Pursuit shall always be terminated when the officer's safety or the safety of others is in jeopardy. (Rules and Regulations, Section 11.13). Watch Supervisors will terminate hot pursuit when, in their opinion based on the facts at hand, continued pursuit is unwarranted."

Boyes testified that he weighed the risks involved in pursuing Dalenberg and the decedent and did not believe they outweighed the desirability of apprehending them. He assessed the reckless and erratic manner in which Dalenberg was driving the motorcycle and determined it to pose a greater risk to the safety of Dalenberg and the decedent than pursuing them. He stated that "his job was to stop

the motorcycle and thus end the danger." Boyes opined that "the girl's life was probably in danger as well as the guy's on that motorcycle and the general public the way that he was driving or whoever was driving that motorcycle was acting. My job was to stop [it] and protect other people's lives."

Plaintiff's expert on police pursuit methods and regulations, James Auten, testified at his deposition (only a portion of which plaintiffs submitted as part of the record on appeal) that he had no opinion as to how fast Boyes was traveling during the pursuit. He further testified that there was nothing about the traffic, weather or road conditions that weighed against the pursuit taking place. Auten stated that in his opinion, the pursuit was properly initiated and conducted, except for Boyes crossing the Lincolnshire jurisdictional line. Auten testified that he, too, would have initiated the pursuit had he been in Boyes' position. He acknowledged that Boyes "was operating at his own discretion [since] [t]here appeared to be no supervisory personnel on duty" but opined that Boyes should not have traveled outside his jurisdiction since he was unable to obtain authority from a supervisor. He further opined that the continuation of the pursuit outside of Lincolnshire was a proximate cause of the accident which led to the decedent's death. However, Auten also testified that the pursuit was terminated prior to the collision site, "at the point that [Boyes] lost visual contact with the motorcycle and slowed to the slow search pattern, whereupon he deactivated his equipment."

In his affidavit filed several months after his deposition was conducted, Auten opined that Boyes showed an "utter indifference to or conscious disregard" for the decedent's safety by:

"a. Continuing the pursuit without first notifying his dispatcher of the pursuit, thereby precluding other law enforcement personnel from assisting with the pursuit;

b. Continuing the pursuit through at least four other jurisdictions other than his own without approval or notice;

c. Failed to consider lighting conditions which affect the visibility of the officer and motorcycle driver during a high speed chase;

d. Disregarding traffic signals, thereby endangering the life of other people, including plaintiff's decedent;

e. Failed to consider the heightened risks involved with a high speed motorcycle chase in comparison to an automobile pursuit;

f. Failed to activate his siren subsequent to initiating the pursuit."

He stated that the foregoing conduct on the part of Boyes was

willful and wanton and was a proximate cause of the decedent's death.

On February 22, 1994, plaintiffs filed the affidavit of Doctor George Kirkham, a second expert witness in the area of police standards. Doctor Kirkham opined that Boyes "exhibited a conscious disregard for the safety of Lisa Urban, and was grossly negligent and wilful and wanton" in initiating and continuing his pursuit of the motorcycle when it was being driven erratically and at a high rate of speed and carried a passenger who was not wearing a helmet. In Doctor Kirkham's view, the risks to a helmetless motorcycle passenger "greatly outweighed any risks to the public which would have been associated with terminating the pursuit." Doctor Kirkham concluded that Boyes' pursuit of the motorcycle was a proximate cause of the collision and of the decedent's death.

At the close of the hearing on defendants' motion for summary judgment, the trial court held that Boyes' pursuit of Dalenberg and the decedent did not constitute willful and wanton conduct. The court went on to hold that, even if the pursuit did amount to willful and wanton conduct, it was not the proximate cause of the decedent's death since it was terminated some distance away from where the collision with the automobile occurred.

Section 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) provides:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." (Ill. Rev. Stat. 1989, ch. 85, par. 2—202.)

The Act further provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Ill. Rev. Stat. 1989, ch. 85, par. 2—109.

Section 1—210 of the Act defines willful and wanton conduct as:

> "[A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." Ill. Rev. Stat. 1989, ch. 85, par. 1—210.

Accord *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522.

There is no dispute here that Boyes was a public employee within the meaning of the Act. (Ill. Rev. Stat. 1989, ch. 85, pars. 1—206, 1—207.) Nor is there any dispute that, in pursuing the motorcycle on which Dalenberg and the decedent were riding on the night in question, Boyes was engaged in the enforcement of the law. It follows, then, that in order to recover from Boyes or his employer, the Village

of Lincolnshire, plaintiffs must prove that Boyes' conduct was willful and wanton. *Sank v. Poole* (1992), 231 Ill. App. 3d 780, 596 N.E.2d 1198.

In an action for willful and wanton misconduct, the plaintiff must establish the existence of a duty, breach of that duty, and an injury proximately resulting from that breach. (*Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498, 507 N.E.2d 64.) The existence of a duty on the part of Boyes is not at issue. The sole issue here is whether Boyes' pursuit of the motorcycle constituted willful and wanton misconduct and, if so, whether such misconduct was a proximate cause of the collision and of the death of the decedent which resulted from the collision.

Plaintiffs contend that the trial court erred in holding that Boyes' pursuit of the motorcycle did not amount to willful and wanton conduct. They also contend that the court erred in holding that the pursuit was not a proximate cause of the decedent's death. We do not agree with either of plaintiffs' contentions. Rather, for the reasons which follow, we believe the trial court's ruling was proper in both respects.

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992); *Green v. International Insurance Co.* (1992), 238 Ill. App. 3d 929, 605 N.E.2d 1125.) In deciding a motion for summary judgment, the trial court's sole function is to determine whether issues of material fact exist; it is not to try those issues. (*Green*, 238 Ill. App. 3d at 933, 605 N.E.2d at 1128.) The court must construe the record before it most strictly against the movant and in favor of the nonmovant and draw all reasonable inferences in favor of the nonmovant. (*Green*, 238 Ill. App. 3d at 933, 605 N.E.2d at 1128.) The trial court's grant of summary judgment is subject to *de novo* review on appeal. *Wiseman-Hughes Enterprises, Inc. v. Reger* (1993), 248 Ill. App. 3d 854, 617 N.E.2d 1310.

While the question of whether a defendant's actions amount to willful and wanton misconduct is normally one of fact to be resolved by the jury, it may be determined by the trial court on a motion for summary judgment if the evidence meets the standard enunciated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, that is, if all of the evidence, when viewed in the aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary determination based on that evidence could ever stand. (*Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.)

The trial court in this case concluded, as a matter of law, that Boyes' pursuit of Dalenberg and the helmetless decedent did not amount to willful and wanton conduct. In granting summary judgment in favor of defendants, the court considered the dangerous manner in which Dalenberg was driving the motorcycle and the undisputed testimony of Boyes that he pursued the motorcycle out of a concern for the safety of the decedent as well as Dalenberg. The court noted that Boyes kept a safe distance from the motorcycle and maintained a constant speed such that his vehicle posed no harm to other vehicles on the roadway. It further noted the undisputed testimony of Boyes that the weather was clear, traffic was light, and the road was dry. On this point, the court emphasized that plaintiffs' own expert witness, Auten, did not consider the weather, traffic, or road conditions to be factors that weighed against the pursuit taking place and noted that Auten in fact considered Boyes' decision to initiate the pursuit to be a proper one.

Plaintiffs' argument that Boyes acted willfully and wantonly appears to be premised upon the sole fact that Boyes chose to engage in a high-speed chase with the motorcycle while the decedent was a passenger on the motorcycle and was not wearing a helmet. According to plaintiffs, Boyes should have never engaged in the pursuit under these conditions. Plaintiffs cite no authority for this proposition, however, and we therefore reject it. To accept plaintiffs' argument would, in defendants' words, "tie the hands" of every police officer to act whenever a helmetless motorcycle driver or passenger is involved, despite the fact that he, by his conduct, creates a dangerous condition to himself and others. This cannot be the law of this State.

In *Breck* (141 Ill. App. 3d 351, 490 N.E.2d 88), the court set forth the standards for finding willful and wanton conduct in a situation involving a police pursuit, and we believe they bear repeating here:

> "In order for a defendant's acts or omissions to be characterized as wilful or wanton, they must have been committed with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others. [Citation.] In evaluating the conduct of the police officers here, we must be mindful of the reason for their pursuit of [the driver]. The evidence in the instant case, even when viewed in its aspect most favorable to plaintiffs, establishes that [the driver] was driving his car in a reckless manner and endangering the public before the police began to chase him. *** Under these circumstances, a failure on the part of the police to act would have presented a substantial threat to public safety. Moreover, although all high speed pursuits of suspected law violators involve risk to other motorists and

pedestrians on the road, the circumstances here did not make the pursuit exceptionally hazardous. *** Considering the danger to the public created by [the driver's] presence on the roads and the nature of the pursuit involved here, we conclude that the police officers did not act with utter indifference to or conscious disregard for the safety of others. [Citations.] The evidence here, considered in its aspect most favorable to plaintiffs, so overwhelmingly favors defendants that no contrary conclusion could ever stand." *Breck*, 141 Ill. App. 3d at 360-61, 490 N.E.2d at 94.

■ In the present case, there is simply no evidence that shows Boyes to have been willfully and wantonly negligent notwithstanding the opinions of plaintiffs' experts to the contrary. The mere fact that Boyes pursued a motorcycle as opposed to an automobile is itself insufficient to show willful and wanton conduct on the part of Boyes. Rather, as plaintiffs' own expert, Auten, testified to in his deposition, except for Boyes' traveling across jurisdictional lines in pursuing Dalenberg and the decedent, the pursuit was proper. The undisputed facts show that Boyes began the pursuit out of a concern for the safety of Dalenberg and the decedent, as well as for the general public. The record shows that he activated his flashing lights immediately after beginning the pursuit and a few tenths of a mile later sounded his siren. The weather was clear and dry and traffic was light. Moreover, the record indicates that Boyes kept a safe distance from the motorcycle and maintained a constant speed such that his vehicle posed no harm to other vehicles on the roadway. Boyes maintained constant communication with his dispatcher throughout the course of the pursuit. That Boyes traveled outside his jurisdiction without first obtaining authority from a supervisor in breach of a department regulation does not, under the circumstances here, amount to willful and wanton conduct because the undisputed facts indicate that no supervisor was on duty at the time. In our view, plaintiffs have shown no set of facts that could lead a reasonable person to find that Boyes' actions in pursuing the motorcycle exhibited an actual or deliberate intention to harm or an utter indifference to or conscious disregard for the safety of either Dalenberg or the decedent. Indeed, the facts show that he carefully weighed the risks of the pursuit against the nature of Dalenberg's actions, which consisted of erratically weaving his motorcycle in and out of the southbound lanes of Route 21 at 78 miles per hour while carrying a passenger who was not wearing a helmet and in the process of doing so ran at least two red lights, posing an additional danger to other innocent motorists. For the reasons stated, we believe summary judgment in favor of defendants was proper.

■ Furthermore, even were we to agree with plaintiffs that Boyes' pursuit of the motorcycle did amount to willful and wanton conduct, we cannot agree that it was the proximate cause of the collision which led to the decedent's death. We acknowledge that both of plaintiffs' experts opined that the pursuit proximately caused the collision and the decedent's death. However, Supreme Court Rule 191(a) compels us to disregard such conclusions in ruling on the propriety of the trial court's grant of summary judgment in favor of defendants. (145 Ill. 2d R. 191(a) ("Affidavits in *** opposition to a motion for summary judgment *** shall not consist of conclusions but of facts admissible in evidence ***"). See *Estate of Blakely v. Federal Kemper Life Assurance Co.* (1994), 267 Ill. App. 3d 100, 640 N.E.2d 961.) Even ignoring Dalenberg's deposition testimony that he drove down I-294, and not Route 21, and was never pursued by Boyes on the night in question (which, if believed, would itself negate a finding that defendants proximately caused the decedent's death), the undisputed material facts, as testified to both by Boyes and Auten, show that Boyes terminated his pursuit of the motorcycle some distance from the collision site. Accordingly, the pursuit cannot be said to have proximately caused the collision. (See *Kimber v. City of Warrenville* (1993), 248 Ill. App. 3d 361, 617 N.E.2d 1263 (where police officer abandoned pursuit, his conduct cannot be said to have been a proximate cause of the accident which led to the decedent's death).) For this additional reason, we conclude that summary judgment in favor of defendants was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and ZWICK, JJ., concur.