The ESTATE OF James Thomas DAY, by his personal representatives, Harvey Strosin and Emma Strosin, and Desiarlle Dawn Day, by her next friends, Harvey Strosin and Emma Strosin, Appellants,

v.

James WILLIS, Robert W. Leger, State of Alaska and State of Alaska, Department of Transportation and Public Facilities for Anchorage International Airport Security, jointly and severally, Appellees.

No. S–5543.

Supreme Court of Alaska.

June 30, 1995.

 

Carl Frasure, Anchorage, for appellants.

Venable Vermont, Jr., Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before MOORE, C.J. and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

COMPTON, Justice.

The issue before the court is whether law enforcement officers owe a legal duty to fleeing offenders to refrain from pursuing them in order to protect the offenders from harm that may arise from the offenders' own actions during a high speed pursuit. We hold that they do not.

## I. *FACTS AND PROCEEDINGS*

In June 1985 Anchorage International Airport Security Officer James Willis was on a routine perimeter check of the airport. He drove past a park, noting several cars there in violation of the park curfew. Observing what appeared to be a liquor bottle on the roof of one of the cars, Willis entered the park to investigate. He called for the assistance of a back-up officer; Sergeant Robert W. Leger responded to the call. Upon the arrival of Leger, an individual later identified as James Day ran into adjacent woods. The remaining individuals were dispersed. The officers called dispatch for information on the single car left in the area. They learned that it belonged to Day, who was wanted by the Anchorage Police Department (APD) for a stop sign violation, and assault and battery. Unable to locate Day, the officers withdrew from the park to await the arrival of a canine unit from APD. They also considered the possibility that Day would voluntarily come out of the park. Shortly thereafter Day's car sped by. Leger pursued the car, reaching speeds of 70–75 miles per hour. After pursuing the car for some time, Leger claims that he decided to slow down because (1) he lost sight of the car, (2) the road was wet, and (3) he felt that further pursuit was not prudent. He also knew that APD was responding from the direction in which the car was headed. When Leger reached the top of a hill, he saw that the car had left the road and crashed. Day, who indeed was driving, died in this accident. An autopsy revealed that Day's blood alcohol level was .21% and his urine alcohol level .25%.

In May 1987 the Estate of Day (Estate) filed a wrongful death suit against the State, Leger and Willis. The superior court granted summary judgment in favor of the State and the officers. It concluded that the Estate had failed to establish the existence of a duty which required the officers to take Day into protective custody and thereby prohibit him from using his car. This court affirmed the superior court's decision. *Estate of Day v. Willis*, Mem. Op. & J. No. 506 (Alaska, June 6, 1990) (*Day I*).

■ In July 1990 the Estate learned of an additional witness, Donald Maki, who claimed to have observed Leger's pursuit of Day.[1] Maki's affidavit stated that Leger did not disengage his pursuit of Day prior to the accident, but instead closely followed Day's car until the accident. The Estate filed the complaint in the present case (*Day II*) alleg-

---

1. The following is a summary of statements made by Maki in his affidavit:
   1. Maki observed flashing police lights in his rear view mirror.
   2. Day then passed Maki going in excess of 80 m.p.h.
   3. Approximately 50 to 100 yards behind Day, an airport police car was in pursuit.

   4. Day approached the horseshoe bend in Northern Lights Boulevard and failed to maintain the road. His vehicle began to cartwheel and was destroyed by the accident.
   5. Maki never witnessed the officer disengage from the chase.
   [R. 274]

ing negligent and intentional spoliation[2] of evidence against Leger and the State of Alaska (State). The spoliation was alleged to be the result of the State's failure in *Day I* to provide the name of Maki.[3] The State moved for summary judgment, claiming, *inter alia*, that the Estate failed to show destruction of evidence and that Alaska does not recognize the tort of negligent spoliation. The superior court denied the primary motion, but asked for further briefing on the issues of causation and damages. The State argued that the Estate was unable to show causation, because the Estate was precluded from relitigating the issue of duty during a pursuit. The State claimed the question of duty had been argued in *Day I* and not appealed. The superior court rejected the collateral estoppel argument. It refused to speculate how the Estate's case may have been decided differently had it known of Maki's testimony.[4] It held that because Maki's testimony was still available and the Estate was unable to identify any significant prejudice or staleness in its evidence, the Estate would have to prove that it would have prevailed in *Day I* in order to recover damages for spoliation/wrongful death.

The State moved for reconsideration of the denial of summary judgment. Before trial the superior court requested oral argument. The court recognized that this case turned on the issue of whether pursuing officers owe a duty to fleeing offenders to protect them from their own actions. After oral argument, the superior court granted summary judgment to the State because "the absence of duty in the underlying case, obviously, obviates the causation element in the spoliation case." The Estate appeals.

## II. DISCUSSION

### A. Standard of Review

■ When reviewing a grant of summary judgment, this court must determine if any genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

Whether a pursuing officer owes a duty to a fleeing offender is a matter of law and public policy. Therefore, this court must "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. The Estate's Spoliation Claim is Without Merit

The Estate argues that the tort of spoliation arises from its allegation of concealment. It contends that spoliation stands as "its own tort" and that this court does not need to reach the elements of the underlying negligence claim.

The State contends that the Estate lost because no duty was owed, not because of a failure to preserve evidence. It asserts that nothing in Maki's testimony changes whether the State owed a duty to Day.[5] Additionally,

---

**2.** "Spoliation" is the destruction or alteration of evidence. *See Black's Law Dictionary* 1401 (6th ed. 1990). Some courts—including this court in *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 463–64 (Alaska 1986)—and litigants refer to this act as "spoilation." However, the majority of jurisdictions and commentators use the word "spoliation." For consistency within this opinion, we will refer to this act as "spoliation."

**3.** Maki came forward to the Estate's attorneys after reading articles about the *Day* case. Maki allegedly gave his name and other identifying information to Leger at the scene. It is undisputed that Maki gave no statement regarding his observations. Leger denies having spoken to Maki at all. Leger's notebook which might have contained Maki's name and identifying information could not be located.

**4.** Neither party has argued the issue of collateral estoppel to this court.

**5.** In *Day I* the dispositive issue was whether Officer Leger owed Day a duty to take him into custody and thereby prohibit him from using his car. In *Day II*, with Maki's evidence, the issue as first presented appeared to be whether Leger owed Day a duty to break off the chase. However, at oral argument the Estate argued that the issue was not a duty to break off the chase, but rather a duty to break off the chase as conducted. The Estate presented the following theory of negligence: Officer Leger drove the police car down into a dip near the railway and turned off his siren. However, he did not break off the chase. When he came out of the dip, therefore, his car suddenly loomed into Day's view, distracting Day. The absence of the siren, which would

the State argues that public policy prohibits the shifting of the consequences of Day's criminal conduct from himself to the State and its citizens. We agree.

■■■ We are not persuaded by the Estate's claim that the tort of spoliation can stand as "its own tort." [6] An action based on the tort of spoliation is meritless unless it can be shown that a party's underlying cause of action has been prejudiced by the spoliation. *See Smith v. Superior Court for the County of Los Angeles,* 151 Cal.App.3d 491, 198 Cal. Rptr. 829, 835–37 (1984) (acknowledging that the tort of spoliation requires a showing that the defendant reduced the "probable expectancy" of the plaintiff's claim). This is especially so in a case such as this where the allegedly spoliated evidence is available. Therefore, in order for the Estate to prevail on its spoliation claim, its underlying cause of action, which is based on negligence, must be viable. In order to prevail on a cause of action based on negligence it is essential that the following elements be satisfied: (1) the defendant must have owed a duty to the plaintiff, (2) that duty must have been breached and (3) the injury to the plaintiff must have been proximately caused by the breach. *Larman v. Kodiak Elec. Ass'n,* 514 P.2d 1275, 1279 (Alaska 1973). As discussed below, we hold that officers do not owe a legal duty to fleeing offenders to protect them from their own actions. Therefore,

because at least one of the essential elements of the Estate's underlying negligence claim cannot be satisfied, its spoliation claim likewise must fail.

### C. Officers do not Owe a Duty to Fleeing Offenders To Protect Them From Their Own Actions

■■■ Whether a legal duty exists, when not governed by statute, is a public policy question involving specified considerations that this court enumerated in *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.,* 628 P.2d 554, 555 (Alaska 1981).

"The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved."

*Id.* at 555 (quoting *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 131 Cal.Rptr. 854, 859–64 (1976)); *see also Busby v. Municipality of Anchorage,* 741 P.2d 230, 233 (Alaska 1987) (citing *D.S.W.*).[7]

---

have announced his presence, caused the distraction and hence the accident.

**6.** In *Sweet v. Sisters of Providence,* 895 P.2d 484 (Alaska 1995) we observed:

In keeping with the *Smith* [*v. Superior Court,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984)] rationale, a number of other courts have recognized that negligent destruction of records may give rise to an independent tort of spoliation. However, it is our view that, in the present case, the remedy of burden shifting is a sufficient response to the loss or destruction of the records. Other courts have reached the same conclusion. We need not decide in this case whether the recognition of a separate tort of negligent destruction of evidence would ever be appropriate, for example, against a third party not associated with the underlying lawsuit.

895 P.2d at 492–93 (citations omitted).

**7.** Alaska's excessive force statute does not establish an actionable duty of care under these cir-

cumstances. AS 12.25.070 expressly applies only to a "person arrested." Day was neither arrested nor in custody at the time of the chase.

The Estate had asserted in *Day I* that a source of duty could be derived from the defendants' internal administrative and training manual entitled "Police and Fire, State of Alaska." The court held that even assuming these materials were admissible as evidence of a standard of care, they did not provide a basis for a source of a legal duty. We agree. Furthermore, there was evidence presented that the applicable sections were not in effect at the time of the accident, although the court never made a specific ruling on this issue.

Additionally, nothing in title 13, sections 02.140(c) or 02.517(f) of the Alaska Administrative Code creates a duty to protect fleeing offenders. Title 13, section 02.140 of the Alaska Administrative Code establishes that all drivers need to yield the right-of-way to an authorized emergency vehicle which is responding to an emergency. The section further provides that

Application of these factors to the present case leads us to the conclusion that officers do not owe a legal duty to fleeing offenders to protect these offenders from their own actions.

It is foreseeable that most people driving a car will stop promptly when pursued by an officer. However, it is equally foreseeable that some will not. An officer pursing a fleeing offender at high speeds creates a significant risk that an accident will occur. We assume, for purposes of discussion, that there may be a close connection between an officer's pursuit of a fleeing offender and fleeing offender's injury during the pursuit.[8] The State persuasively argues that despite any possible close connection, public policy should emphasize the blameworthiness of the fleeing offender's criminal conduct. An officer was attempting to make a lawful stop. The offender was unlawfully fleeing from the officer. Therefore, as stated by the superior court, even if the officer was negligent, his negligence "does not carry the same moral negativity as does [the fleeing offender's] actions." It is undisputed that officers owe a legal duty to innocent third parties who are injured during high speed pursuits.[9] The State argues that this duty is sufficient to minimize the risk that chases will be conducted in a negligent manner. The State further effectively asserts that adding fleeing offenders to the zone of duty owed would "minimize

[the offender's] criminal conduct, [sic] and impede lawful police efforts to pursue fleeing offenders. In fact, failing to pursue could be seen as inviting future harm to innocent third-parties by failing to attempt to take dangerous drivers off the road." Additionally, imposing such a duty on officers could have the effect of encouraging offenders to attempt escape. The consequences to the community of imposing a duty are easily ascertainable. It would be the public that would incur the cost, because it is the State that usually will be sued. Thus, public funds would be used to compensate a person who chose to flee from an officer. Again, the State persuasively argues that this would be poor public policy. *Cf. Lord v. Fogcutter Bar*, 813 P.2d 660, 663 (Alaska 1991) ("[c]ourts have consistently refused to aid those whose claims are based upon their own illegal acts").

After balancing the above considerations, we conclude that public policy and the *D.S.W.* factors dictate against imposing a legal duty on officers to protect fleeing offenders from their own actions.

## III. CONCLUSION

Summary judgment was proper. Law enforcement officers do not owe a legal duty to

---

although others are to give drivers of emergency vehicles the right-of-way, the drivers of the emergency vehicles still have a "duty to drive with regard for the safety of all persons using the highways." 13 AAC 02.140; *see also* 13 AAC 02.517(f) (also enumerating a duty of emergency vehicle drivers to "drive with regard for the safety of all persons"). We do not interpret these sections as establishing a duty to protect fleeing offenders. Rather, these provisions focus on the safety of innocent third parties. *Contra York v. Ohio State Highway Patrol*, No. 89 AP–143, 1990 WL 59279 at * 2–3 (Ohio App. May 8, 1990) (construing a similar statute as establishing a duty to protect pursued motorists but conceding that a person intentionally attempting to escape from the police to avoid arrest for his own misconduct cannot recover from the state for injuries sustained as a result of his own misconduct during the attempted escape; the speeder's negligence is the "overwhelming proximate cause") *aff'd* 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991), *reh'g denied* 61 Ohio St.3d 1423, 574 N.E.2d 1093 (1991).

8. However, we need not address the State's assertion that in this case, "it is questionable whether there was even a factual closeness since Day began driving drunk and speeding before . . . Leger began to pursue him." *See Kimber v. City of Warrenville*, 248 Ill.App.3d 361, 187 Ill. Dec. 542, 548, 617 N.E.2d 1263, 1269 (1993) (holding that "even assuming *arguendo* that [the officer acted negligently in failing to abandon pursuit of the intoxicated motorist], such negligence would be too remote to be considered a proximate cause of [the pursued's death]") *appeal denied*, 153 Ill.2d 560, 191 Ill.Dec. 620, 624 N.E.2d 808 (1993).

9. For a listing and summary of cases on the issue of duty owed by pursuing police to innocent third parties who are struck by the fleeing offender, *see Boyer v. State*, 323 Md. 558, 594 A.2d 121, 135–36 (1991); *see also Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 242–243 (Alaska 1993) (holding an officer comparatively negligent for injuries caused to a third party during a high speed pursuit).

fleeing offenders to refrain from pursuing them in order to protect the offenders from the consequences of their own actions.

Therefore, the judgment of the superior court is AFFIRMED.