THIRD DIVISION
MARCH 22, 2006

1-04-0642

| | | |
|---|---|---|
| WILLIAM A. WADE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | No. 00 L 11859 |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (Robert P. Jasinski, Michael Madigan, William O'Reilly, | ) | |
| John Coughlin, and Wayne Jarocki, | ) | Honorable |
| | ) | James S. Quinlan, Jr., |
| Defendants). | ) | Judge Presiding. |

JUSTICE ERICKSON delivered the opinion of the court:

Plaintiff, William Wade, brought this action against defendants, the City of Chicago (City) and police officers Robert Jasinski, Michael Madigan, William O'Reilly, John Coughlin, and Wayne Jarocki,[1] to recover damages for the injuries he received during an alleged vehicle "chase" in downtown Chicago on October 4, 2000. A jury entered a verdict in favor of defendants Jasinski and the City, and the trial court entered judement on the verdict. Plaintiff appeals.

BACKGROUND

On October 4, 2000, at approximately 2:20 p.m., Jerry Davis was driving westbound on Van Buren Street, located in downtown Chicago, in a station wagon fleeing from the police. At the same time, plaintiff was walking on the sidewalk on the north side of Van Buren Street when Davis drove up onto the sidewalk and struck plaintiff and other pedestrians. As a result, plaintiff was treated for

---

[1]Officers Madigan, O'Reilly, Coughlin, and Jarocki are not parties to this appeal as the trial court granted summary judgment in their favor on October 23, 2003.

multiple injuries and underwent numerous surgeries on his right leg.

On October 16, 2000, plaintiff filed a two-count complaint against the City and an unnamed officer for negligently, willfully, and wantonly "pursuing" a vehicle on October 4, 2000. He alleged that the officer's "pursuit" caused the driver of the pursued vehicle to drive up onto the sidewalk and strike plaintiff, thereby causing his injuries. On February 22, 2001, plaintiff amended his two-count complaint by adding two additional counts, and added Davis as the driver of the pursued vehicle.

On January 23, 2001, the City, on behalf of defendant police officers, moved to dismiss plaintiff's complaint based on the immunity provision of section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-202 (West 2002)), arguing that the officers were immune from liability for negligence in the execution or enforcement of the law, and that plaintiff failed to allege sufficient facts for a willful and wanton claim. Plaintiff amended the complaint and deleted the negligence claim against defendants. He subsequently amended the complaint two additional times and filed a fourth amended complaint, adding Officer Jasinski and several other officers as defendants. Thereafter, he filed a first amendment to the fourth amended complaint, alleging that the City and the named police officers negligently conducted a "pursuit." The City moved to dismiss the amendment. The trial court granted the City's motion and dismissed plaintiff's negligence claim with leave to amend. Plaintiff repleaded his negligence count only against Officer Jasinski in his second amendment to the fourth amended complaint. The City again filed a motion to dismiss the negligence count, which the trial court denied on May 9, 2003. The City also filed various affirmative defenses and a counterclaim against Davis for contribution.

Plaintiff moved to enter a default judgment against Davis,[2] which was granted on January 31, 2001. Plaintiff subsequently moved to dismiss his claims against Davis, which the trial court allowed.

On September 12, 2003, the City moved for summary judgment, arguing that Officers Madigan, O'Reilly, Coughlin, and Jarocki, who were not in the vehicle, could not have engaged in any "pursuit" and therefore did not act willfully or wantonly and did not proximately cause plaintiff's injuries. On October 23, 2003, the trial court granted summary judgment in favor of the City and the matter proceeded to trial against defendants Jasinski and the City.

Prior to trial, the City filed several motions in limine. As relevant here, the trial court reserved ruling on the City's motion to bar testimony from certain witnesses, including James Cox, indicating that they had heard an officer say there was a "chase" or a "pursuit." The trial court also ruled that any evidence regarding events after plaintiff's accident would not be admitted.

Plaintiff, in his motion in limine, requested the court to bar any evidence of Davis's criminal history. The trial court ruled that it would allow evidence regarding Davis's outstanding warrant, but not concerning any prior criminal history.

Plaintiff argued that Jasinski willfully and wantonly chased Davis through a crowded

---

[2]At the time of discovery, Davis was believed to be an inmate in the Cook County jail for an unrelated offense.

downtown street, with conscious disregard for or utter indifference to the safety of others, and that Jasinski's conduct was a proximate cause of his injuries.

Defendants argued that plaintiff's injuries were exclusively caused by Davis and that Jasinski's conduct was not willful and wanton.

At trial, Officer Jasinski testified that he had been working for the City as a police officer for 8 ½ years. On October 4, 2000, he was working in plain clothes on "pickpocket duty" with about 10 other officers. Jasinksi testified that he and the other officers were on a designated frequency on the police radio so they could communicate to each other. To communicate to the central office, they would turn a knob on the radio and switch to an open frequency. While on the network frequency, Jasinski heard another police officer, Jarocki, announce over the radio that a station wagon in the alley just west of Wells Street, between Jackson Boulevard and Van Buren Street, was suspicious. He believed that the occupant of the station wagon may have attempted to break into a van in the alley. Jasinksi drove to the end of the alley on Van Buren Street in his unmarked car. He parked about 30 feet from the alley, exited the vehicle and walked toward the alley. He then heard over his radio that the station wagon was coming down the alley toward him and saw it driving out of the mouth of the alley without stopping or yielding at about 25 miles per hour.

Jasinski went to his unmarked car. As he was getting in his car, he saw the station wagon speed up and run a red light at Franklin Street without slowing down, going about 35 miles per hour. At that point, Jasinksi activated his emergency lights and siren and drove west on Van Buren Street. He had oscillating lights and white strobe lights on the sides. Jasinski testified that he was trying to identify the driver and the license plate number to conduct an investigation. He slowed down to five

miles per hour at the Franklin Street light, checked traffic, then drove through the red light with his emergency equipment activated. At that time, the station wagon drove through another red light on Wacker Drive. Jasinski waited for traffic to stop and switched to the left side of the street so that oncoming traffic could see him better. He then proceeded through the red light at Wacker Drive. After crossing the intersection, he saw the station wagon on the bridge at the Chicago River but could not see it once it went over the crown of the bridge. As he drove over the bridge, he saw the station wagon stopped in traffic. The light at the next intersection, Canal Street, was red, and traffic was backed up from the light. Jasinski then witnessed the station wagon drive up onto the sidewalk at about 35 miles per hour, but he did not see it hit anyone. At this time, he was about 20 to 25 cars behind the station wagon. Jasinksi testified that he was not in "pursuit" of the station wagon because he was never close enough to signal the driver to pull over. The entire event happened over approximately two blocks, during which time Jasinski was driving the speed limit of 30 miles per hour. Subsequent events after the accident, including an event where Jasinski hit the back of the station wagon shortly after it had crashed into another vehicle after turning the wrong way on a one-way street, were not admitted into evidence as the trial court found them to be irrelevant.

Terrence Costello testified that he was driving westbound on Van Buren Street on October 4, 2000, at around 2:20 p.m., when he saw a station wagon strike a man in the sidewalk. He testified that the station wagon was driving at about 45 or 50 miles per hour. He believed that about 10 seconds later, although it could have been longer, he heard and saw a unmarked police car driving in the left lane at about 35 to 40 miles per hour. In an offer of proof, Costello testified that he thought the police vehicle was "chasing" the station wagon because very little time had passed between when

the station wagon struck plaintiff and when the police car came up next to him. The trial court struck the offer of proof as Costello did not have a trustworthy basis for his conclusion.

Syed Hussain testified that he was driving a taxi cab that day when he witnessed the accident. He opined the station wagon was driving at about 35 miles per hour. He stated that he heard the siren about a second or two after the second pedestrian was struck. He estimated that the police car was traveling at about 35 miles per hour. In an offer of proof, Hussain, as a experienced taxi cab driver of 15 years, opined that he believed that the police officer was "chasing" the station wagon.

James Cox testified that on October 4, 2000, he was on a heating and air conditioning service job at a building on Jackson Boulevard and Wacker Drive, and he parked his van in the alley west of Wells Street. He heard sirens and checked on his van from the roof, where he saw two people walking around and looking into his van. When he got downstairs, he learned that the two people were police officers and that the back window of the van was broken and there were pry marks on the van. In an offer of proof, Cox testified that one officer told him they had seen someone breaking into his van, and the other said that another officer had given chase. A third officer, whom Cox originally identified as Jasinski, told him that he was the one that gave chase. However, on cross-examination, Cox stated that he was not sure whether Jasinski was the officer that told him he chased the assailants.

Pamela Hutter testified that she was driving on Van Buren Street when she observed the accident. She testified that traffic was congested and the weather was sunny, dry, and clear. She saw a silver station wagon on the sidewalk strike two people. She exited to help plaintiff and called 911. She also testified that she never saw an unmarked police car or heard a siren. In an offer of

proof, Hutter stated that she continued west on Van Buren Street when she left the scene of the accident. She stated that on Jefferson Street, she saw the "same gray station wagon involved in a car accident and stopped."

Dennis Waller, plaintiff's expert witness, opined that Jasinski's conduct was a "pursuit." His definition of "pursuit" was consistent with Chicago Police Department General Order (General Order) 97-3. It defines "pursuit" as:

> "[a]n active attempt by a sworn member operating an authorized emergency vehicle to apprehend any driver or operator of a motor vehicle who, having been given a visual and audible signal by the officer directing such driver or operator to bring his vehicle to a stop, fails to or refuses to obey such direction, increases or maintains his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer."

He testified that to assess the need for a pursuit, an officer must use a balancing test to determine whether the reason for the "pursuit" outweighs the potential harm to the public and the officer. He opined that this is substantially the same standard stated in General Order 97-3. Other considerations are weather conditions, road conditions, pedestrian presence, traffic, hazards, the ability to identify the driver of the vehicle, the presence of passengers in the vehicle, the manner in which the pursued party is driving, and the officer's familiarity with the area. Waller testified that officers in "pursuit" are generally required to notify a supervisor so that an independent officer can assess the situation and determine whether the field officer may continue the "pursuit." According

7

to Waller, a "pursuit" is not defined by distance, but by the conduct of the drivers.  Waller also testified that he believed that Jasinski's "pursuit" was improper because the offense involved a possible attempted property crime, which was insufficient to justify risking injury to the officer or third parties.

At the close of plaintiff's case, defendants moved for a directed verdict, which the trial court granted with regard to the negligence claim and denied with regard to the willful and wanton conduct claim.

Thomas Walton, defendants' expert witness, opined that there was no "pursuit" as Jasinski was never close enough to the station wagon to signal it to pull over.  He testified that the majority of the evidence demonstrated "no active attempt to apprehend."  Even if Jasinski's conduct constituted a "pursuit," Walton testified that the pursuit was proper because the station wagon was driving in a "very, very dangerous manner to the life and safety of others."  Over plaintiff's objection, Walton testified that he reviewed the criminal history of the registered owner of the station wagon, Davis, in coming to his conclusion.  The trial court overruled plaintiff's relevance objection in stating that "it explains the movement of Davis'[s] car, and that's a big factor in this case."

Defendants renewed their motion for a directed verdict on the remaining willful and wanton count, but the trial court denied the motion.  Defendants also moved for a directed verdict on their counterclaim for contribution against Davis, which the trial court granted.  The court instructed the jury that it had determined that Davis was liable and that it did not need to decide this issue.

Plaintiff asked that photographs of his injuries, the street and sidewalk, and the vehicles be

8

sent back to the jury, and the trial court agreed. The trial court however refused plaintiff's request to send the General Order to the jury, stating "I don't feel they have been explained thoroughly and I don't want the jury coming to any conclusions on the parts *** that haven't been explained. They have heard whatever material the parties wanted to explain." Plaintiff's counsel did not object to the trial court's ruling.

The jury returned a verdict for defendants. Answering a special interrogatory, the jury also found that Officer Jasinski's conduct was not willful and wanton. This appeal followed.

ANALYSIS

Plaintiff argues that the trial court abused its discretion by not admitting into evidence certain actions that took place subsequent to the accident and certain testimonies of lay witnesses indicating their beliefs that defendant "chased" the driver, and by admitting the evidence of Davis's status as a parolee as basis of forming an expert opinion. Plaintiff also argues that the trial court erred by not allowing the General Order into the jury room during deliberations. Plaintiff argues that Officer Jasinski was involved in a vehicular "pursuit" and that his conduct was willful and wanton because he did not follow the General Order before engaging in and during the "pursuit."

Defendants contend that the trial court did not abuse its discretion on the evidentiary rulings. Even if it did, defendants contend reversal is not warranted as they did not affect the outcome of the trial. See Argianas v. Chestler, 259 Ill. App. 3d 926, 947 (1994). When there is an error in a evidentiary ruling in a civil trial, a reviewing court should not reverse the trial court's decision unless that error was substantially prejudicial and affected the outcome of the trial. State Farm General Insurance Co. v. Best in the West Foods, Inc., 282 Ill. App. 3d 470, 484 (1996).

In addition, defendants contend that, as a matter of law, Officer Jasinski's conduct was not willful and wanton and that his conduct did not proximately cause plaintiff's injuries. Defendants ask this court to affirm the judge of the trial court on this basis.

A reviewing court may affirm the trial court's decision on any ground supported by the record. Estate of Strocchia v. City of Chicago, 284 Ill. App. 3d 891, 901 (1996) (Estate of Strocchia). Where, as here, the judgment below was entirely in favor of an appellee, the scope of review with regard to an appellee is not limited to the errors assigned by the appellant. Rather, an appellee may argue to affirm the judgment on any basis supported in the record without the need to file a cross-appeal. Estate of Strocchia, 284 Ill. App. 3d at 901-02.

Accordingly, we consider defendants' argument, advanced before this court and in their motion for a directed verdict, that plaintiff failed to present any evidence that Jasinski acted willfully and wantonly, or that he proximately caused plaintiff's injuries. See Estate of Strocchia, 284 Ill. App. 3d at 902.

A municipality and its police officers owe a duty to preserve the community's well being, and this duty is owed to the public at large. Ozik v. Gramins, 345 Ill. App. 3d 502, 513 (2003) (Ozik). Accordingly, an individual cannot recover from negligence. Ozik, 345 Ill. App. 3d at 513. This immunity to the common law public duty rule was codified in the Tort Immunity Act. Doe v. Calumet City, 161 Ill. 2d 374, 385 (1994). Section 2-202 of the Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2002).

A municipality is not liable for an injury resulting from its employee's act or omission if the employee is not liable. See 745 ILCS 10/2-109 (West 2002). A police officer is "executing" or "enforcing" a law, within the meaning of section 2-202, when he is engaged in an investigation in order to enforce traffic laws. See Fitzpatrick v. City of Chicago, 112 Ill. 2d 211, 220-22 (1986); Morton v. City of Chicago, 286 Ill. App. 3d 444, 455 (1997) (Morton). Thus, plaintiff in this case cannot prevail unless he can prove that Jasinski's conduct was willful and wanton and a proximate cause of his injuries. See Urban v. Village of Lincolnshire, 272 Ill. App. 3d 1087, 1094 (1995) (Urban).

The evidence plaintiff presented to support each of these elements of his claim, including even the evidence he argues should have been admitted but was not, was nevertheless insufficient to support a verdict for plaintiff on either element.

In an action for willful and wanton misconduct, the plaintiff must establish (1) an existence of a duty, (2) breach of that duty, and (3) an injury proximately resulting from that duty. Urban, 272 Ill. App. 3d at 1094. Although the question of whether an action amounts to willful and wanton conduct is normally a question of fact for the jury, a court may make a determination of that issue if the evidence, when viewed in the light most favorable to the opponent, overwhelmingly favors the movant and no contrary determination based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. R. Co., 37 Ill. 2d 494, 510 (1967).

Plaintiff, relying on Suwanski v. Village of Lombard, 342 Ill. App. 3d 248 (2003) (Suwanski), responds that a question of whether conduct is willful and wanton is for a jury to decide. Plaintiff argues that Jasinski's conduct was willful and wanton because he consciously disregarded

11

the safety of the public by "pursuing" a vehicle for a property crime in downtown Chicago and by failing to follow the General Order protocol.

Section 97-3 of the General Order provides, <u>inter alia</u>:

> "Emergency Situation - A situation or assignment in which the probability of death, personal injury, the apprehension of suspected offenders or the loss or destruction of property exists, and action by a law enforcement officer may avert or reduce the seriousness of the situation.
>
> ***
>
> Police officers operating unmarked [d]epartment vehicles will be permitted to engage in a motor vehicle pursuit only when the fleeing motor vehicle or its occupants represent an immediate and direct threat to life.
>
> ***
>
> The [d]epartment member will only engage in a motor vehicle pursuit when *** notification has been made to the [office of emergency communications] dispatcher regarding the facts concerning the pursuit, when necessary, assistance has been requested in order to apprehend a pursued motor vehicle operator who is taking evasive action to avoid being apprehended."

Violation of self-imposed rules or internal guidelines, such as the General Order section 97-

3, "does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct." Morton, 286 Ill. App. 3d at 454. Moreover, this court has consistently held that a police officer cannot be found to have acted willfully and wantonly when he pursues a vehicle driven recklessly as long as the officer does not pursue the vehicle in a reckless fashion. See Morton, 286 Ill. App. 3d at 454; see Nelson v. Thomas, 282 Ill. App. 3d 818, 829-30 (1996) (Nelson); see Urban, 272 Ill. App. 3d at 1095; see Laco v. City of Chicago, 154 Ill. App. 3d 498, 504-05 (1987) (Laco).

In Nelson, the police officers pulled over the assailant who recently had been described over the police radio as a suspect for a "smash-and-grab" incident. The assailant fled from the police at high speed at the end of rush hour near a busy intersection, and the pursuit ensued. The court affirmed the trial court's order granting summary judgment for the village and the police, finding that the officer's 6 to 9 block pursuit while maintaining the approximate speed limit did not constitute willful and wanton conduct even though traffic was heavy and road conditions were wet. Nelson, 282 Ill. App. 3d at 829-30.

Similarly, in Urban, an officer pursued a driver on a motorcycle who was weaving in and out of traffic at a high rate of speed, ultimately leading to a high-speed chase that ended when the motorcycle crashed into an automobile, fatally injuring the passenger of the motorcycle. Upholding the trial court's order granting summary judgment, the court stated that because the police officer activated his emergency equipment immediately after beginning the pursuit, the weather was clear and dry, the traffic was light, and the officer kept a safe distance from the motorcycle at a constant speed, no reasonable jury could find that the officer "exhibited an actual or deliberate intention to

13

harm or utter indifference to or conscious disregard for the safety or either [the motorcyclist] or the [passenger]." Urban, 272 Ill. App. 3d at 1096.

In Laco, a police officer pursued a vehicle on city streets and reached a speed of 40 to 45 miles per hour. The court explained:

> "After initially spotting the fleeing violator driving down a one-way street the wrong way and observing him make a U-turn onto 31st Street, defendants turned on their blue Mars light and the car's siren. The officers' car speed varied during the chase from 15 miles per hour to 40 or 45 miles per hour, and, at one point, decreased to [2] to [3] miles per hour in order to maneuver through double-parked cars. Moreover, although the fleeing traffic violator increased his speed after passing the double-parked cars to 60 miles per hour, the defendants did not. We believe these facts indicate a regard for the safety of others, rather than an utter indifference or conscious disregard of their safety; the defendants' car speed apparently was changed to adapt to the changing circumstances as they were encountered." Laco, 154 Ill. App. 3d at 505.

Suwanski, the case upon which plaintiff relies, is easily distinguishable from the case at bar as that case was decided under a unique set of circumstances that are not present in this case. In Suwanski, a police officer was pursuing a vehicle for over eight minutes for about 6 ½ miles. The speed during the chase reached 100 miles per hour. During the pursuit, one car, in an attempt to

14

avoid a collision with the pursued vehicle, crossed the oncoming lanes of traffic and crashed into a road construction sign. The police continued the pursuit even after the first collision until the pursued vehicle crashed into a car, killing the drivers of both vehicles. Under the specific facts of that case, the Second District, with one justice dissenting, reversed and remanded the trial court's order granting summary judgment for the city, finding that the plaintiff presented a question of fact for the jury on the issue of whether the police officer engaged in willful and wanton conduct in pursuing the vehicle. Swanksi, 342 Ill. App. 3d at 257.

In this case, plaintiff did not prove that Jasinski's conduct was willful and wanton. Section 1-210 of the Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2002). Illinois courts have interpreted this requirement "to mean that a plaintiff must prove that the defendant's conduct was reckless [citation], and by deliberately inflicting 'a highly unreasonable risk of harm' on the plaintiff, 'approache[d] the degree of moral blame attached to intentional harm.'" Morton, 286 Ill. App. 3d at 452, quoting Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill. 2d 429, 448 (1992). Even assuming plaintiff's excluded evidence should have been admitted and therefore assuming that Jasinski undertook "pursuit," he did not drive recklessly or show utter indifference to others' safety. During the chase, Jasinski's lights and siren were activated. When he came to a red light, he slowed down and proceeded through the red light at about five miles per hour with his emergency equipment still activated. He also moved into the left lane so that he would be visible to the oncoming traffic. At no time did his speed exceed the speed limit of 30 or 35 miles per hour.

15

We believe Jasinski acted with due regard for the safety of the general population.

Even if we were to conclude otherwise, we find that the record here contains no evidence upon which the jury could conclude that any action by Jasinski was the proximate cause of plaintiff's injuries.

Plaintiff, again relying on Suwanski, argues that Jasinski proximately caused his injuries because the accident was a foreseeable and a likely result of the pursuit.

Proximate cause has two components: (1) cause in fact; and (2) legal cause. First Springfield Bank & Trust v. Galman, 188 Ill. 2d 252, 257-58 (1999) (Galman). Cause in fact can be established if there is a "reasonable certainty" that a defendant's act caused the injury. Galman, 188 Ill. 2d at 258. Legal cause can be established only if a defendant's acts are "'so closely tied to the plaintiff's injury that he should be held legally responsible for it.'" Simmons v. Garces, 198 Ill. 2d 541, 558 (2002), quoting McCraw v. Cegielski, 287 Ill. App. 3d 871, 873 (1996). While the issue of proximate cause is ordinarily a question of fact for the jury, it is well settled that it becomes a question of law when the facts alleged show that the plaintiff would never be entitled to recover. Abrams v. City of Chicago, 211 Ill. 2d 251, 257-58 (2004).

In Morton, the assailant fled at a high speed after he had been stopped by the police. During the chase, the assailant hit another car and his vehicle deflected into the plaintiff while she was sitting at a bus stop. The court found that the plaintiff did not produce any evidence that the officers' conduct proximately caused the plaintiff's injuries. The court explained: "While the officers' initial actions in stopping behind [the pursued] car may have served as the impetus for [the pursued assailant] to act as he did in speeding from the scene, [the assailant's] subsequent actions, alone,

16

caused this tragedy." Morton, 286 Ill. App. 3d at 455. Similarly, in Nelson, the court held that the suspect's flight from the police at a high rate of speed and his failure to stop at a red light, and not the police officer's actions during the pursuit, were the legal cause of the plaintiff's injuries. See Nelson, 282 Ill. App. 3d at 828.

We again find that Suwanski's holding is limited to its facts and does not apply in this case. Here, Jasinski did not drive recklessly or cause Davis to drive recklessly. Jasinski was stuck in traffic about 20 to 25 cars behind the station wagon, keeping a safe distance and driving at a constant speed, keeping the speed limit when Davis drove up onto the sidewalk and struck plaintiff. It was Davis's own independent decision to drive onto the sidewalk without regard for the pedestrians' safety that caused plaintiff's injuries. Plaintiff's argument that Jasinski's continued pursuit of the station wagon after seeing it run a red light proximately caused his injuries is illogical and against sound public policy. If a police officer could be held liable for his honest miscalculation, it would encourage criminals to flee from the police more dangerously, knowing that the more recklessly they drive, the less likely the officer will continue to pursue them due to the risk of a potential civil liability. See Suwanski, 342 Ill. App. 3d at 259-62 (O'Malley, J., dissenting).

Considering the evidence in the light most favorable to plaintiff, we conclude that the evidence so overwhelmingly favors defendants that no contrary verdict could stand. Plaintiff simply failed to establish the essential elements of a willful and wanton cause of action. Thus, any errors regarding the trial court's evidentiary rulings will not provide a basis for a reversal as they were at most harmless. We similarly find that any error in withholding the General Order exhibits from the jury deliberation room was harmless.

CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court in favor of defendants.

Affirmed.

THEIS and KARNEZIS, J.J., concur.